UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NICOLE C.,[1]

      **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      **Defendant.**

Case No. 2:21-cv-999
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Nicole C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

On May 10, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since August 1, 2012. R. 51, 59, 154−57. The application was denied initially and upon

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

reconsideration. R. 68–72, 76–78. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 79. Administrative Law Judge ("ALJ") Gina Pesaresi held a hearing on January 14, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 28–50. In a decision dated February 5, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 1, 2012, Plaintiff's alleged disability onset date, through September 30, 2016, the date on which Plaintiff was last insured for benefits. R. 12–23. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 17, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 12, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[3] On May 13, 2021, the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 31 years old on September 30, 2016, *i.e.,* the date on which she was last insured. R. 21. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 1, 2012, her alleged disability onset date, and September 30, 2016. R. 15.

At step two, the ALJ found that Plaintiff's major depressive disorder and obsessive-compulsive disorder were severe impairments. *Id.* The ALJ also found that Plaintiff's left shoulder condition and alleged back pain and asthma were not severe. R. 15–16.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 16–17.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work subject to various non-exertional limitations. R. 17–21. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an order clerk and receptionist. R. 21.

At step five, the ALJ found that a significant number of jobs—*e.g.*, approximately 57,000 jobs as a hand packager; approximately 53,500 jobs as a landscaper; and approximately 113,000 jobs as a housecleaner—existed in the national economy and could be performed Plaintiff despite her lessened capacity. R. 22. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 1, 2012, her alleged disability onset date, through September 30, 2016, the date on which she was last insured. R. 23.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 19. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20.

**IV.   DISCUSSION**

Plaintiff argues that the "ALJ's mental RFC determination is unsupported by substantial evidence due to his failure to obtain sufficient guidance from a healthcare professional despite evidence warranting development." *Plaintiff's Memorandum of Law*, ECF No. 19, pp. 18–24. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the administrative law judge who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ

cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that, during the relevant time period, Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the claimant was limited to simple work with no more than occasional interaction with supervisors or coworkers; and never tolerating any interaction with the public." R. 17. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, an emergency room visit on December 5, 2012, after Plaintiff's friend called an ambulance because the friend was concerned that Plaintiff had nodded to sleep after taking narcotic painkillers for back pain, but during which an evaluation of Plaintiff was unremarkable and she signed out of the hospital against medical advice; a December 13, 2012, evaluation by Plaintiff's treating psychiatrist, Syed Rasheed, M.D., which revealed that Plaintiff complained of depression and anxiety and endorsed decreased appetite, reduced energy, anhedonia, concentration difficulty, fatigue, generalized worrying, and insomnia and during which Dr. Rasheed noted that Plaintiff appeared irritable, inattentive, minimally communicative, tense, and anxious and during which he prescribed Zoloft, Trazodone, and Klonopin; notes from an early January 2013 office visit that Plaintiff reported that the medications were not helping, that although Plaintiff exhibited signs of moderate depression, she exhibited fair insight and social judgment, and that Dr. Rasheed increased her medication dosages; notes from a follow up visit later in January 2013 indicating that Plaintiff presented with only mild depression; progress notes from March 2013 indicating that Plaintiff complained of ongoing anxiety and nervousness, as well as obsessional thoughts and that Dr. Rasheed started Plaintiff on Risperdal; notes from

June 2013 indicating that Plaintiff reported that she had stopped taking all medications because she felt that they were not doing anything, although she continued to present with signs of only mild depression and reflecting Dr. Rasheed's advice that comply with all medical instructions and the fact that he discontinued Risperdal and prescribed Celexa, Ambien, and Ativan; notes from a July 2013 office visit during which Plaintiff reported insomnia, anxiety, and irritability in the context of her grandmother's hospitalization, but reflecting that Plaintiff's presentation remained stable, with signs of mild depression and for which Dr. Rasheed increased the dosage of Celexa; Dr. Rasheed's August 2013 increase of Plaintiff's Celexa dosage; Plaintiff's report in September 2013 that she had miscarried, that she was stressed, and that she had stopped all medications during her pregnancy and Dr. Rasheed's notation of ongoing mild depression and short attention span; Plaintiff's report in November 2013 that she had stopped Celexa and that she was becoming anxious, Dr. Rasheed's notation that Plaintiff was cooperative and attentive with no gross behavioral abnormalities, and Dr. Rasheed's resumption of Celexa; Plaintiff's complaint of insomnia in December 2013, and Dr. Rasheed's observation that Plaintiff had taken her medication regularly and that her behavior was stable and unremarkable. R. 18–19.[4] The ALJ went on to explain her consideration of Plaintiff's alleged symptoms and subjective complaints, and the accommodations included in her RFC determination:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. The claimant's mental health treatment through the date last insured was entirely conservative. The claimant began treating with Dr. Rasheed in December 2012. She initially exhibited signs of moderate depression, which reduced to a mild level of severity by late January 2013. Her

---

[4] "There are no further treating records through the claimant's date last insured." R. 19.

> treatment consisted of therapy and medication management approximately once a month. Despite the claimant's non-compliance with her medication regimen, Dr. Rasheed's progress notes reflect that the claimant's clinical signs remained mild in severity. There are no records spanning the period from December 2013 through the date last insured. . . .
>
> Based on the combined effects of the claimant's major depressive disorder and OCD, the undersigned has carefully restricted her to simple work with occasional interaction with supervisors and coworkers and never interacting with the public. The limitation to simple work accounts for the claimant's inattentiveness, short attention span, excessive worrying, and insomnia. The restriction on interactions with others appropriately addresses her irritability and minimally communicative presentation. The claimant's non-severe left shoulder impairment does not support the imposition of any physical limitations.

R. 20–21. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, argues that substantial evidence does not support this RFC determination because "the ALJ did not acknowledge a third prominent diagnosis at Step Two, nor did he recognize it as a severe impairment or evidence its consideration in determining the RFC." *Plaintiff's Memorandum of Law*, ECF No. 19, p. 18. Plaintiff explains that Dr. Rasheed, her treating psychiatrist, "consistently included an Axis II diagnosis of '799.00[,]'" *id*. at 20 (citing R. 260, 262, 264, 266, 268, 270, 272, 275, 277, 279, 282 (reflecting Dr. Rasheed's progress notes dated December 5, 2013; November 4, 2013; September 19, 2013; August 22, 2013; August 19, 2013; July 29, 2013; June 24, 2013; March 4, 2013; January 31, 2013; January 3, 2013; and December 13, 2012, respectively)), which she contends is "the ICD-9 code denoting other unknown and unspecified cause of morbidity and mortality[.]" *Id*. at 4 (citing http://www.icd9data.com/2012/Volume1/780-799/797-799/799/799.9.htm (Last visited by Plaintiff September 14, 2021)). Plaintiff observes that Dr. Rasheed later diagnosed Plaintiff in 2017 (*i.e.*, after the date on which Plaintiff was last insured for benefits)

with panic disorder (episodic paroxysmal anxiety) without agoraphobia and bipolar disorder (current episode depressed, severe, without psychotic features. *Id*. at 21 (citing R. 258 (reflecting Dr. Rasheed's progress note dated June 26, 2017)). Plaintiff argues that "[g]iven the issues with differentiating bipolar disorder from Axis II personality disorders (See Footnote 5), it appears that bipolar disorder was likely an underlying issue during the relevant period recognized by the 799.99 diagnosis. It was certainly a diagnosis later in the record." *Id*. (citing R. 237 (reflecting hospital record dated June 19, 2017, containing, *inter alia*, working diagnosis of bipolar disorder)), 258 (reflecting Dr. Rasheed's progress note dated June 26, 2017)), 471 (reflecting hospital record dated June 19, 2018, diagnosing bipolar disorder)). Plaintiff contends that "no opinion was sought, nor any inquiry conducted, to clarify the reasoning behind the use of the 799.99 medical term of art. This is error…." *Id*. at 22 (citing *Shannon v. Comm'r of Soc. Sec.*, No. 15-6480 (RMB), 2016 WL 5133741, at *17 (D.N.J. Sept 20, 2016) and arguing further that the state agency's request in this case for information from Heather Bellizzi, LCSW, was not the "source with the best information").

      Plaintiff's arguments are not well taken. As a preliminary matter, Plaintiff concedes that her bipolar diagnosis came after the date on which she was last insured and her argument that "it *appears* that bipolar disorder was *likely* an underlying issue during the relevant period recognized by the 799.99 diagnosis[,]" *Plaintiff's Memorandum of Law*, ECF No. 19, p. 21 (emphasis added), is wholly based on rank speculation. Her reliance on *Shannon* is also unavailing. In that case, this Court held that the ALJ improperly discounted the claimant's subjective complaints when the ALJ "impermissibly interpreted the medical data herself, rather than relying upon the medical opinions of the physicians who evaluated Plaintiff, in order to make this credibility determination." *Shannon*, 2016 WL 5133741, at *17. Conversely, in the

12

present case, the ALJ properly relied on record evidence, including medical evidence, when considering Plaintiff's subjective complaints. R. 20. *Shannon* is therefore inapposite. In any event, as the Acting Commissioner points out, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20, pp. 8–9, the state agency fulfilled its duty to develop the record when it obtained Dr. Rasheed's records. *See* 20 C.F.R. § 404.1512(b)(1)(ii); *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) ("The burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition. . . . The ALJ's only duty in this respect is to ensure that the claimant's complete medical history is developed on the record before finding that the claimant is not disabled.") (citations omitted).

Plaintiff nevertheless insists that the ALJ should have recontacted Dr. Rasheed or other providers to "clarify" the reference to "799.99." *Plaintiff's Memorandum of Law*, ECF No. 19, p. 22. However, an ALJ is required only to "recontact the medical source when the evidence received from the medical source is inadequate to determine whether or not the claimant is disabled, not because the ALJ finds the doctor's opinion inconsistent with the claimant's medical records." *Gladden o/b/o Hyman-Self v. Berryhill*, 2018 WL 1123763, at *6 (E.D. Pa. Feb. 28, 2018) (internal quotation marks omitted) (quoting *Kelly v. Colvin, C.A.* No. 09-759-RGA-SRF, 2013 WL 5273814, at *16 (D. Del. Sept. 18, 2013)). Notably, "[t]here is no obligation to recontact a medical source when the ALJ finds that the record as a whole provides an adequate basis to determine whether the claimant is disabled." *Id*. As detailed above, the ALJ considered the objective medical evidence and implicitly determined that she had sufficient information from the record as a whole to reach a conclusion. Finally, to the extent that Plaintiff suggests that the ALJ could not craft the RFC without Dr. Rasheed's opinion, Plaintiff is mistaken. It is the

ALJ—not a physician—who makes the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361; *see also Titterington v. Barnhart*, 174 Fed. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."). In short, under the circumstances presented in this case, Plaintiff has not persuaded this Court that the ALJ was required to make further contact with Dr. Rasheed or other providers.

However, even if Plaintiff suffered from bipolar disorder prior to the date on which she was last insured, Plaintiff has pointed to no evidence that the condition was disabling during the relevant time period. *See generally Plaintiff's Memorandum of Law*, ECF No. 19; *see also Kolpack v. Colvin*, No. 13-2257, 2014 WL 2965903, at *10 (D.N.J. July 1, 2014) (finding that the claimant was not entitled to benefits even though his later-diagnosed condition was present before his date last insured because the condition did not become disabling until after the date last insured); *Gurcak v. Astrue*, No. 12-CV-4556, 2013 WL 6816175, at *6 (D.N.J. Dec. 20, 2013) ("An impairment that is not disabling until after the expiration of claimant's insured status cannot establish a claimant's entitlement to benefits.") (citations omitted); *Manzo v. Sullivan*, 784 F. Supp. 1152, 1156 (D.N.J. 1991) ("Evidence of an impairment which reached disabling severity after the date last insured, or which was exacerbated after this date, cannot be the basis for the determination of entitlement to a period of disability and disability insurance benefits, even though the impairment itself may have existed before plaintiff's insured status expired.") (citations omitted). Notably, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than

the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act").

In any event, as noted above, the ALJ specifically considered Plaintiff's symptoms flowing from her mental impairments, including Plaintiff's inattentiveness, short attention span, excessive worrying, and insomnia, as well as her irritability and minimally communicative presentation, and accommodated these limitations by restricting Plaintiff to simple work and limiting her contact with others, including only occasional contact with supervisors and co-workers and never interacting with the public. R. 17, 21. Although Plaintiff speculates that "the evidence *suggests* that Plaintiff was unable to respond appropriately to supervision, coworkers, and usual work situations [*i.e.* usual work stress][,]" *Plaintiff's Memorandum of Law*, ECF No. 19, p. 24 (emphasis added), an ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted). Notably, Plaintiff does not explain why the ALJ's RFC restrictions of occasional interaction with supervisors and coworkers, no interaction with the public, and simple work do not sufficiently accommodate her alleged mental limitations. *Plaintiff's Memorandum of Law*, ECF No. 19, p. 24; *see also Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, *performing a 'simple routine task' typically involves low stress level work* that does not require maintaining sustained concentration.") (emphasis added). In short, Plaintiff has not shown that

the ALJ erred in her consideration of Plaintiff's mental impairments when crafting the RFC or that any such error warrants remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case"). Accordingly, the Court concludes that the ALJ's findings regarding Plaintiff's mental RFC are consistent with the record evidence and enjoy substantial support in the record.

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 2, 2022                           *s/Norah McCann King*
                                                                  NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE